MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2026 ME 69
Docket:       BCD-25-193
Argued:       January 6, 2026
Decided:      July 23, 2026

Panel:        STANFILL, C.J., and MEAD, LAWRENCE, and DOUGLAS, JJ., and HORTON, A.R.J.

JOHN VENEZIANO

v.

BERNARD J. SAULNIER

STANFILL, C.J.

[¶1]  Bernard J. Saulnier appeals from a disclosure order entered in the Business and Consumer Docket (*Duddy, J.*) enforcing a money judgment against him and requiring him to make weekly payments of $1,009 to the judgment creditor, John Veneziano.  Because the underlying judgment was entered in federal court and has not been domesticated, the disclosure court had no authority to enforce it, and we vacate the court's order for lack of jurisdiction.

## I.  BACKGROUND

[¶2]  On November 17, 2021, Veneziano filed in the District Court (Biddeford) a disclosure subpoena and a proof of service on Saulnier.  *See* 14 M.R.S. §§ 3122-3123, 3126 (2026).  Attached to the subpoena was what appears to be a copy of a $3,500,000 judgment that Veneziano obtained against Saulnier

2

in the United States Bankruptcy Court for the District of Maine on March 29, 2021. In February 2022, the court granted Veneziano's request to transfer the case to the Business and Consumer Docket. *See* M.R. Civ. P. 131.

[¶3] Following a series of discovery disputes and other delays, the court held a disclosure hearing on February 11, 2025. *See* 14 M.R.S. § 3125(1) (2026). On April 9, 2025, the court entered an order enforcing Veneziano's federal judgment. *See* 14 M.R.S. §§ 3125(5), 3126-A (2026). The court determined, based on Saulnier's earning $350,000 per year, that the maximum payment authorized by statute was $1,009 per week, *see* 14 M.R.S. § 3126-A(3), and it ordered Saulnier to begin making those payments the following week. Saulnier timely appealed, *see* M.R. App. P. 2B(c)(1), and the court granted his request for a stay pending appeal, *see* M.R. Civ. P. 62(e).

[¶4] On appeal, Saulnier initially argued that the court erred by "imputing" earnings to him in excess of the $40,000 per year that he earns "on the books." At oral argument, we advised the parties that the record did not indicate whether the federal judgment had been filed and domesticated as a state court judgment, *see* 14 M.R.S. §§ 8001-8008 (2026); *Faith Temple v. DiPietro*, 2015 ME 166, ¶ 15, 130 A.3d 368, and we requested supplemental

briefing on whether the court had subject-matter jurisdiction to conduct disclosure proceedings on an undomesticated federal judgment.

## II. DISCUSSION

[¶5]   Saulnier now argues that the disclosure court exceeded its subject-matter jurisdiction by acting upon Veneziano's undomesticated federal judgment.   Veneziano does not dispute that the federal judgment was not domesticated, but he argues that the domestication requirement is merely a claim-processing rule and that Saulnier waived any arguments as to domestication by failing to raise them in the disclosure court.

[¶6]  Because Saulnier did not raise any issues related to domestication in the disclosure court, he has not preserved any domestication-based arguments for appeal.  *See, e.g.*, *Homeward Residential, Inc. v. Gregor*, 2017 ME 128, ¶ 9, 165 A.3d 357.  Thus, we must determine whether the domestication requirement is a claim-processing rule, which is procedural and "may be waived," or a true jurisdictional prerequisite, which "cannot be waived and may be raised at any time." *Monteith v. Monteith*, 2021 ME 40, ¶ 22, 255 A.3d 1030.

[¶7]  Subject-matter jurisdiction "refers to the power of a particular court to hear the type of case that is then before it."  *Id.* (quotation marks omitted). Absent subject-matter jurisdiction, a court has "no authority to act."

4

*Guardianship by Stacey M.*, 2022 ME 1, ¶ 8, 265 A.3d 1004; *see also In re Jensen*, 145 Me. 1, 4, 70 A.2d 248, 249 (1950) ("The bounds of jurisdiction mark the limits of the courts' authority."). Whether a court acted in excess of its subject-matter jurisdiction is "a question of law that we review de novo." *Ewing v. Me. Dist. Ct.*, 2009 ME 16, ¶ 12, 964 A.2d 644.

[¶8] When a case is transferred to the Business and Consumer Docket, the court retains the subject-matter jurisdiction of the originating court. *Maples v. Compass Harbor Vill. Condo. Ass'n*, 2025 ME 19, ¶ 22, 331 A.3d 435. This case originated in the District Court, so the disclosure court had the subject-matter jurisdiction of the District Court. *See id.*

[¶9] The District Court's subject-matter jurisdiction is statutory. *See, e.g.*, *Donn-Griffin v. Donn*, 615 A.2d 253, 255 (Me. 1992); *Doane v. Dep't of Health & Hum. Servs.*, 2017 ME 193, ¶ 12, 170 A.3d 269. Here, the court acted pursuant to Maine's disclosure statute, 14 M.R.S. §§ 3120-3138 (2026). Thus, whether the court exceeded its jurisdiction depends on whether the disclosure statute authorizes the District Court to act upon undomesticated federal judgments. We conclude that it does not.

[¶10] The disclosure statute sets out "an efficient procedure for the enforcement of money judgments." *Id.* § 3120. To initiate disclosure

proceedings, a judgment creditor must subpoena the judgment debtor and file with the District Court (1) a copy of the subpoena and a return of service and (2) a writ of execution on the underlying judgment. *Id.* §§ 3122-3123, 3126. The court must then hold a hearing to "determine [the judgment debtor's] ability to pay the judgment," and the debtor must disclose "income, assets and any other information which will aid the judgment creditor in enforcing the judgment." *Id.* § 3125(1). After the hearing, the court may impose a number of remedies to enforce the judgment, including requiring payment in regular installments.[1] *Id.* §§ 3125(1)-3132.

[¶11] The disclosure statute plainly requires, if nothing else, a judgment. Without a judgment, there is nothing for a court to enforce, and with nothing to enforce, the court has no basis to exercise the powers conferred by the statute. Thus, just as a court has jurisdiction to conduct divorce proceedings only when there is a marriage to be dissolved, *see, e.g.*, *Est. of Carter v. Martin*, 2026 ME 34, ¶ 5, 354 A.3d 1154, a court has jurisdiction to conduct disclosure proceedings only when there is a valid judgment to be enforced. And, although the disclosure statute does not expressly define the "judgments" to which it applies,

---

[1] The statute provides a formula to determine the maximum permissible amount of each installment payment, considering the amount of the debtor's "disposable earnings" and "exempt income." *See* 14 M.R.S. §§ 3121(1)-(2), 3126-A(1)-(3).

6

*see* 14 M.R.S. § 3121, it necessarily applies only to judgments entered in Maine state courts and not to those entered in foreign courts.

[¶12]    We start with the language of the disclosure statute, which requires a judgment creditor to obtain and file a writ of execution.  *Id.* § 3126. A writ of execution may issue on only "a judgment of the Superior Court or the District Court."  14 M.R.S. § 4651 (2026); *see, e.g.*, *Faith Temple*, 2015 ME 166, ¶ 18, 130 A.3d 368 (holding that a trial court erred by ordering that a writ of execution issue in the absence of "a favorable state court judgment").

[¶13]    We also note that the common-law rule is that Maine courts can enforce only Maine judgments,[2] *see Faith Temple*, 2015 ME 166, ¶¶ 11-16, 130 A.3d 368; *Maples*, 2025 ME 19, ¶ 14, 331 A.3d 435, and there is nothing in the disclosure statute that suggests an intent to alter or deviate from that rule, *cf. Reed v. Sec'y of State*, 2020 ME 57, ¶ 20, 232 A.3d 202 ("[W]e construe a statute to alter the common law only to the extent the Legislature makes clear its intent to do so." (quotation marks omitted)).

---

[2] At common law, a creditor can recover on a foreign-judgment debt in a Maine state court only by bringing a subsequent action on the foreign judgment.  *See Faith Temple*, 2015 ME 166, ¶¶ 11-16, 130 A.3d 368; *Maples*, 2025 ME 19, ¶ 14, 331 A.3d 435.  For examples of cases involving common-law actions on foreign judgments, see *Lamberton v. Grant*, 94 Me. 508, 509-20, 48 A. 127, 128-32 (1901); *Endicott v. Morgan*, 66 Me. 456, 457-58 (1876); *McVicker v. Beedy*, 31 Me. 314, 316-17 (1850); and *McKim v. Odom*, 12 Me. 94, 95-110 (1835).

[¶14] Finally, we note that interpreting the disclosure statute to apply to foreign judgments that have not been domesticated would be inconsonant with the broader statutory scheme governing those judgments. Maine's Uniform Enforcement of Foreign Judgments Act (UEFJA), 14 M.R.S. §§ 8001-8008, sets out the procedure for filing a federal or other state court judgment and provides that any such judgment—*once domesticated*—shall be treated "as a judgment of the District Court or Superior Court of this State" and "may be enforced or satisfied in like manner." *Id.* § 8003; *see, e.g.*, *Safety Ins. Grp. v. Dawson*, 2015 ME 64, ¶¶ 3-4, 116 A.3d 948; *Bruesewitz v. Grant*, 2007 ME 13, ¶ 2 & n.1, 912 A.2d 1255. Allowing a creditor to use Maine's disclosure process to enforce an undomesticated foreign judgment would be inconsistent with the requirement of domestication and render the UEFJA superfluous in this context. *Cf. Monteith*, 2021 ME 40, ¶ 23, 255 A.3d 1030 ("Statutes must be read together and in light of the entire statutory scheme to produce cohesive results." (alteration and quotation marks omitted)).

[¶15] For those reasons, we conclude that the "judgments" referenced by the disclosure statute are *Maine* judgments. A federal-judgment creditor may obtain a Maine judgment by either following the UEFJA's domestication procedure, *see* 14 M.R.S. §§ 8003-8004, or bringing a common-law action on the

federal judgment, *see supra* ¶ 13, n.2, but unless and until the creditor does so, the District Court simply cannot act pursuant to the disclosure statute.

[¶16]   Veneziano does not dispute that a federal judgment must be domesticated before it may be enforced in the District Court, but citing our decision in *Landmark Realty v. Leasure*, 2004 ME 85, 853 A.2d 749, he argues that the domestication requirement is a claim-processing rule rather than a true jurisdictional prerequisite.  We disagree.

[¶17]   *Landmark Realty* involved the enforcement of a Maine judgment.  The creditor, having obtained a judgment and a writ of execution in the Superior Court, initiated disclosure proceedings in the District Court, and the court entered an enforcement order against the debtor.  *Id.* ¶¶ 2-3.  On appeal, the debtor did not dispute that the judgment was valid and enforceable, but he argued that the *writ* was invalid because it had issued more than a year after entry of the judgment.  *Id.* ¶ 6; *see* 14 M.R.S. § 4652 (2026).  However, we did not reach the merits of the debtor's claim about the validity of the writ.  Instead, we determined that "[t]he requirement to file a valid writ of execution with a disclosure subpoena is a claim-processing rule" and, thus, that the debtor had waived any objections to the writ by failing to raise them in the disclosure court.  *Landmark Realty*, 2004 ME 85, ¶¶ 9-10, 853 A.2d 749 (citation omitted).

[¶18]  Veneziano suggests that the lack of domestication in this case is equivalent to the writ-of-execution issue in *Landmark Realty*.  It is not.  A writ of execution—like an indictment in a criminal case or a complaint in a civil suit—may be necessary to *invoke* a court's authority, but that requirement in no way suggests that the court's authority itself depends on the writ.  *See id.* ¶¶ 7-9 & n.1; *State v. Shirey*, 2020 ME 136, ¶ 9 & n.3, 242 A.3d 1103 (explaining that an indictment is necessary to "invoke the court's subject matter jurisdiction" but that "defects in an indictment do not deprive a court of its power to adjudicate [the] case" (quotation marks omitted)); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) (noting that a court's jurisdiction is invoked by the filing of a complaint); *Schlesinger v. Councilman*, 420 U.S. 738, 742 n.5 (1975) ("[S]o long as the court's subject-matter jurisdiction actually existed and adequately appeared to exist from the papers filed, any defect in the manner in which the action was instituted and processed is not itself jurisdictional . . . ." (citation omitted)).  Here, by contrast, the court's jurisdiction to enforce a judgment through the disclosure procedure plainly depends on the existence of an enforceable Maine judgment.  *See supra* ¶¶ 11-15.  Unlike the technical defect alleged in *Landmark Realty*—which involved only the procedure by which the creditor invoked the court's jurisdiction—the lack of

10

domestication in this case left the court without an enforceable judgment upon which it could act. Thus, the domestication requirement is not a mere claim-processing rule, and our rationale in *Landmark Realty* does not apply.

[¶19] In sum, Maine's disclosure statute authorizes the District Court to enforce only Maine judgments, and a foreign judgment may be treated as a Maine judgment only after it has been domesticated here. Because Veneziano's federal judgment has not been domesticated, the District Court has no jurisdiction to enforce it. Accordingly, the court's order must be vacated and Veneziano's action must be dismissed.[3]

The entry is:

> Order vacated. Remanded to the Business and Consumer Docket with instructions to dismiss the action for lack of jurisdiction.

---

[3] Because we vacate the court's order for lack of jurisdiction, we need not address Saulnier's claim that the court impermissibly "imputed" earnings to him. Nevertheless, to aid the court in any future proceedings, we clarify that the disclosure statute (1) prohibits courts from imputing earnings to a debtor based on what the debtor "could" or "should" be earning, *cf.* 19-A M.R.S. § 2001(5)(D) (2026) (providing, for the purposes of calculating child-support obligations, that a party's gross income "may include the difference between the amount a party is earning and that party's earning capacity when the party voluntarily becomes or remains unemployed or underemployed, if sufficient evidence is introduced concerning a party's current earning capacity"), but (2) permits courts to find that a debtor's actual earnings exceed the debtor's reported earnings and to calculate the amount of actual earnings from evidence of unreported earnings, *see, e.g.*, *Bartel v. Zucktriegel*, 47 P.3d 581, 583, 585-86 (Wash. Ct. App. 2002).

Jeffrey Bennett, Esq. (orally), Legal-Ease, LLC, Portland, for appellant Bernard Saulnier

William J. Gallitto, III, Esq., and Jana L. Kenney, Esq. (orally), Bergen & Parkinson, LLC, Saco, for appellee John Veneziano

Business and Consumer Docket docket numbers MNJ-2022-1
FOR CLERK REFERENCE ONLY